# United States District Court
## Western District of Virginia
### Harrisonburg Division

| | | |
|---|---|---|
| **SHERRY K. LOUGH**, | ) | Civil No.: 5:09cv00111 |
| *Plaintiff*, | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMENDATION** |
| **MICHAEL ASTRUE**, | ) | |
| Commissioner of the Social Security Administration | ) | |
| | ) | By: Hon. James G. Welsh |
| *Defendant* | ) | U. S. Magistrate Judge |

This is a second civil action instituted by the plaintiff, Sherry K. Lough, challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement to a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Herein, she challenges a final decision of the Commissioner dated March 9, 2009. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

Following previous agency and administrative law judge ("ALJ") determinations adverse to the plaintiff's earlier DIB application, [1] she sought court review of the final agency determination dated May 16, 2006. This effort was unsuccessful, and summary judgment was

---

[1] In her December 10, 2003 initial administrative filing the plaintiff alleged a disability beginning December 17, 2001 due to a number of medical problems, including degenerative disc disease, high blood pressure, and sleep apnea." *Lough v. Astrue*, 2007 U.S. Dist. LEXIS 35469, *4 (WDVa, May 14, 2007).

granted in the Commissioner's favor on May 14, 2007. *Lough v. Astrue*, 2007 U.S. Dist. LEXIS 35469.

During the pendency of this earlier appeal, the plaintiff filed her current DIB application on January 16, 2007. (R.129-131,139-182, Therein, a disability onset date of May 17, 2006 [2] is asserted due to "chronic low back pain, sciatica and joint pain in both legs." (R.144). As part of the administrative process, a hearing was held on February 7, 2008. At the hearing, the plaintiff was present; she was represented by counsel; she testified, and vocational testimony was provided by Barry Hensley. (R.20-56). The ALJ's written decision denying the plaintiff's current claim is dated March 30, 2009. (R,9-19). Her request for Appeals Council review was also denied (R.1-4), and the ALJ's unfavorable decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

On October 7, 2010, the Commissioner filed his Answer to the plaintiff's Complaint along with a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on October 14, 2010, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and

---

[2] The alleged onset date was originally filed as December 17, 2001, but at the hearing, the plaintiff amended the date to reflect the date one day after the ALJ's adverse decision on the plaintiff's initial application. Thus, the relevant time period in the instant case is from May 17, 2006 until December 31, 2007, the date her insured status expired. (R. 9-18).

authorities and no timely request for oral argument has been made.[3] Accordingly, the following report and recommended disposition is submitted.

I.     **Summary of Recommendation**

The plaintiff was forty-four [4] years of age at the time of her alleged May 17, 2006 disability onset. She has a high school education and her past employment includes production work in the furniture and extruded plastics industries. (R.27-28, 30-31, 42, 52, 128,177-178).

On appeal she contends the ALJ's determinations that she possessed the residual functional capacity to perform sedentary work and that her depression was *non-severe* are not supported by substantial evidence. After a careful review of the full record, the undersigned finds that there is substantial evidence to support each of these contested findings and to support the ALJ's non-disability determination.

II.    **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing

---

[3] WDVa Gen. R. 4(c)(2) directs that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

[4] Under the agency's regulations, the plaintiff is classified as a "younger worker." 20 C.F.R. § 404.1563(a).

court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. *Smith v. Chater,* 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is more than a mere scintilla and somewhat less than a preponderance. *Perales*, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Perales*. 402 U.S. at 401. This standard of review is more deferential than *de novo*. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

**III. ALJ Findings**

Based upon a review of the full administrative record and utilizing the agency's standard sequential evaluation process, [5] which included taking into account the plaintiff's vocational profile, the ALJ's findings include the following: (1) the plaintiff last met the DIB insured status requirements on December 31, 2007 (R.11,132-133,140); (2) her *severe* impairments [6] include obesity, back and knee disorders (R.11); (3) these impairments and their attendant symptoms neither singularly nor in combination meet or equal the severity of a listed impairment (R.13-14);[7] (4) she has the residual functioning capacity to perform sedentary work R.14); [8] and (5) from her alleged onset date through her last insured date there were jobs that existed in significant numbers in the national economy that the plaintiff could have performed (R.18).

---

[5] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 404, Subpt. P, Appx. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); *Hall v. Harris,* 658 F.2$^d$ 260 (4th Cir. 1981).

[6] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014(4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[7] The adult impairments listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1, are descriptions of approximately 125 physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a [person] to show that his or her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *See* Social Security Ruling (SSR) 83-19; *Sullivan v. Zebley*, 493 U.S. 521, 529-530 (1990).

[8] "**Sedentary work**" is defined as the capacity to lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk about 2 hours in an 8-hour workday, and sit about 6 hour in an 8-hour workday that involves no climbing ladders, ropes or scaffolds and only occasionally involved other postural activities such as climbing stairs or ramps, balancing, stooping, kneeling, crouching, and crawling. 20 C.F.R. § 404.1567(a).

## IV. Facts

During the period relevant to her current DIB claim, the plaintiff's treatment records are scant. They show only that she saw Kerry D. Leichty, M.D. (Rockingham Family Physicians) on five occasions. On July 3, 2006 she was seen for a gastrointestinal illness, which was treated with a five-day broad spectrum antibiotic regime. (R.232-233); on June 14, 2007 she was seen for topical treatment of an insect bite on her right arm (R.327), and on February 22, May 1 and August 21, 2007 she was seen to recheck and adjust her medications. (R,231-232,324-325,328). On these three occasions Dr. Leichty noted that the plaintiff reported depressive symptoms, that her high blood pressure was under only "fair" control, and that she reported ongoing low back/hip/pelvic pain. On each of these occasions he also adjusted her blood pressure, antidepressant and pain medications. (*Id.*).

Other than this scant treatment record during the decisionally relevant period, the plaintiff's limited record of earlier medical treatment shows a history of some mild degenerative disc disease, chronic low back pain, "mild" depression and conservative pain management treatment during the years 2005 and 2006. (R.206-216, 217-229).

As part of a September 2007 consultive examination report, Christopher Newell, M.D., noted that the plaintiff was observed to be able to get on and off the examining table without difficulty, to walk with a "mild analgesic gait" without either the need or use of any assistive device, and to exhibit a normal mood and affect, (R.296). His neurological evaluation demonstrated no abnormality other than her "mild[ly]" analgesic gait. (R.299). His examination

of the plaintiff's back disclosed some tenderness over the sacroiliac joint and some tenderness in the lumbosacral area of the back with a "mild[ly]"decreased range of motion in the dorsolumbar spine. (R.297-298). The only other abnormality disclosed during Dr. Newell's physical examination was a two inch surgical scar on the medial aspect of her left knee with some attendant tenderness, swelling, and "mild[ly]" decreased range of motion. (*Id.*)

Based on the medical history provided by the plaintiff, his review of the medical exhibits outlined hereinabove and the results of his clinical examination, Dr. Newell concluded that the plaintiff retained the functional ability to perform sedentary work on a regular basis with "some" bending, stooping and squatting limitation "due to chronic back . . . and left knee pain." (R.294-297).

V. **Analysis**

**A.**

Consistent with the Fourth Circuit's holding in *Albright v. Commissioner*, 174 F. 3$^d$ 473 (4th Cir. 1999), the court is obligated at the outset to take notice of the Commissioner's prior adverse final determination, dated May 16, 2006 and the fact that it is "highly probative" of the plaintiff's continuing residual functional capacity to perform a range of sedentary work on the date she herein alleges she became disabled. *Id.* at 477. *See* Acquiescence Ruling ("AR") 00-1(4). [9]

---

[9] In pertinent part, AR 00-1(4) states: when adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously

In the case now before the court, the medical evidence, as the ALJ noted in his decision (R.16), contains no suggestion that the plaintiff's previously assessed capacity to do work activity at a sedentary exertional level had deteriorated or materially changed in any way during the decisionally relevant period. It contains no suggestion that the *severe* musculoskeletal impairment identified and assessed by the ALJ in her prior claim had deteriorated during the decisionally relevant period. *Compare Lough v. Astrue*, 2007 U.S.Disr. LEXIS 35469, *7 (WDVa, May 14, 2007), *with* R.294-299). Likewise, the medical record contains no cognizable suggestion that her previously identified "mild reactive depression" had increased since the earlier adjudication. (*Id*.; *see also* R.231-232,324-325,328). Absent such evidence, common sense and logic dictate that the plaintiff's physical condition did not change significantly either by the next day or before the expiration of her insured status.

**B.**

Focusing on a September 2005 lumbar MRI examination that "show[ed] some mild degenerative changes but really no evidence of degenerative disc disease" (R.207), on Dr. Newell's September 2007 physical examination findings regarding her back and left knee (R.296-298) and on her testimony concerning her significant daily back pain and persistent leg pain and weakness (R.15,33-36), the plaintiff's principle argument on appeal is that the ALJ did not have a substantial evidentiary basis to support for his conclusion that she retained the functional ability to perform sedentary work. Although couched in terms an absence of supporting substantial evidence, this argument by the plaintiff is in effect a request for the court

---

adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

to re-weigh the evidence and make a different credibility determination concerning her testimony.

As stated above, however, it is not the court's function in this case either to re-weigh the evidence or to make credibility determinations. Responding to a substantial evidence inquiry, the court is required only to address whether the ALJ analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence. *See Milburn Colliery Co. v. Hicks,* 138 F.3$^d$ 524, 528 (4th Cir.1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3$^d$ 438, 439-440 (4th Cir. 1997). In the instant case, the ALJ clearly did.

In making his assessments about the of the plaintiff's residual functional abilities and her credibility, the ALJ took note of her history of back and lower extremity pain, her history of conservative treatment for these conditions in 2005 and 2006, and the diagnoses of sciatica and sacroillitis for these conditions. (R.11-12). He expressly took into account the March 2005 MRI findings of "mild degenerative changes . . . and some stenosis at L4-L5, but no evidence of degenerative disc disease or a surgically amenable lesion," MRI, and he expressly took into account the fact that her condition in February 2006 had improved to the point where she no longer needed to take Tramadol (a moderate to moderately severe pain reliever) on a daily basis. (R.12). In addition, he explicitly considered the September 2007 findings and functional assessment of Dr. Newel, the treatment notes of Dr. Leichty, the plaintiff's obesity ("height of 5'5" and weight of 235 pounds"), her "mild" back and knee pain complaints in August 2007, her failure to follow-up on a referral for physical and a TENS unit in May 2008, and a later "unremarkable" clinical findings in December 2008. (R.12).

Prohibiting a decision maker from basing a finding of disability findings on symptoms alone, Social Security Regulation ("SSR") 96-1p obligates a claimant first to produce "medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." If such evidence is produced, ALJ is obligated to evaluate "the extent to which such symptoms affect the individual's ability to do basic work activities." *Id.* And if he is unable to make a fully favorable decision based on the objective medical evidence alone, the ALJ must then make a "sufficiently specific" credibility assessment to make clear the weight given to the individual's statements and the reasons for that weight. SSR 96-7p.

Following this two-step approach for evaluating pain and other subjective symptoms, in the instant case the ALJ determined that the objective medical evidence established the existence of impairments that could reasonably be expected to produce the plaintiff's subjective symptoms but that the medical evidence alone did not demonstrate a totally disabling condition. (R.15-16). *See Craig v. Chater*, 76 F.3$^d$ 585, 595 (4th Cir. 1996). After which he evaluated the "intensity and persistence [of her subjective symptoms] and the extent to which [they affect] her ability to work," and he concluded that while the plaintiff "does have some limitations due to her impairments" the "record as a whole does not establish that she is so limited that she cannot work at all." (R. 16.)

In making this assessment the ALJ took into account a number of specific inconsistencies between the record and the plaintiff's testimony regarding the severity of her symptoms. *Inter alia*, he noted that her testimony regarding the severity of her symptoms and limitations was

inconsistent with her "generally unremarkable treatment record" during the decisionally relevant period, and he noted her testimony's inconsistency with the absence of any medical opinion suggesting she was physically limited to the extent that she cannot work (R.16). He noted that the plaintiff's medical records suggested no significant change or deterioration of the plaintiff's since the prior adverse decision (R.17). He identified the inconsistency between the plaintiff's testimony and the functional assessments made both by the state agency reviewers and by the consultative examiner. (R.17). And in addition he noted the facial inconsistency between her testimony and her own narrative of routine daily activities, which includes self-care, driving, grocery shopping with the help of her daughter, fixing her meals, visiting family and helping tie cattle. (R.12-13).

Having evaluated the record in considerable detail, including both the evidence concerning her residual functional abilities and her subjective complaints in compliance with the agency's two-step process and having more than minimally explained the bases upon which he discounted her subjective complaints, the ALJ's functional ability and credibility assessments are plainly supported by substantial evidence and exceed the requirements of the agency's relevant rulings and regulations. *See* 20 C.F.R § 404.1529; SSR 96-7p, *Craig v. Chater*, 76 F.3$^d$ at 593-595. Moreover, it must be emphasized that credibility choices, including the one the plaintiff herein seeks to attack, are inherently within ALJ's province as the finder of fact. *Secrist v. Weinberger*, 538 F.2$^d$ 1054, 1056-57 (4th Cir. 1976). "[I]t is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

## C.

Additionally the plaintiff asserts on appeal that the ALJ lack sufficient evidentiary support for his classification her depression as a "non-severe" impairment. This claim of error is also without merit and patently inconsistent with the record.

In a thorough discussion of the plaintiff's depressive condition, the ALJ took note of its diagnosis in 2005, of Dr. Leichty's routine pharmacologic treatment of the condition, of her improvement in her mood with medication, and of her subsequent voluntary discontinuance of the prescribed medication regime. (R.12-13). In making his determination that this medically determinable condition was *non-severe*, the ALJ next considered the absence of any ongoing mental health treatment, the absence of any significant ongoing psychological symptoms, the absence of any episodes of decompensation, and the absence of anything in the medical record to suggest more than a "mild" functional impact the plaintiff's daily living activities, social functioning, concentration, persistence and pace. (R.12-13; *see also* R,231,235,238,270-288, 328). *See*, 20 C.F.R. Part 404, Subpt. P, Appx. 1 § 12.00C.

The plaintiff's testimonial assertion that over time her depressive disorder oscillates significantly in severity and would prevent her from working on a regular and sustained basis also has no objective basis in the record. The only oscillation in her depressive symptoms evident in the record occurred when she ceased taking her medication. (R.13). Likewise, other than one brief reference in Dr. Leichty's office records noting his suggestion to the plaintiff that she begin family counseling, there is no indication in the record to suggest that she acted on this recommendation.

It is, therefore, more than evident the record contains substantial evidentiary support for the ALJ's determination that the plaintiff's depressive symptoms caused no more than a minimal adverse impact on her ability to function. *See Evans v. Heckler*, 734 F.2$^d$ at 1014. It is equally evident that his finding that these symptoms are *non-severe* is supported by substantial evidence.

### D.

The recommendation that the Commissioner's final decision be affirmed does not suggest that the plaintiff is totally free of pain and other subjective discomfort or does not have health issues. The objective medical record, however, simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

## VI.  Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. The ALJ gave proper consideration to the objective and subjective evidence in making his adjudication of the plaintiff's claim;

3. The ALJ's assessment of the plaintiff's credibility was based on substantial evidence;

4. The ALJ properly resolved the evidentiary conflicts about which the plaintiff complains on appeal;

5. Substantial evidence in the record supports the finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

6. The plaintiff has not met her burden of proving a disabling condition through the date she was last insured; and

7. All facets of the Commissioner's final decision should be affirmed.

**VII.  Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VIII.  Notice to the Parties**

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 10th day of August 2011.

                                                                                                                      s/ *James G. Welsh*
                                                                                                                     United States Magistrate Judge